UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LISA MARTIN,

                                   Plaintiff,

v.                                                          8:05-CV-0414
                                                            (GHL)

COMMISSIONER OF SOCIAL SECURITY,

                                   Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

OFFICE OF MARK A. SCHNEIDER            MARK A. SCHNEIDER, ESQ.
*Counsel for Plaintiff*
57 Court Street
Plattsburgh, New York 12901

HON. GLENN T. SUDDABY                     WILLIAM H. PEASE, ESQ.
United States Attorney for the              Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER[1]

### I.     BACKGROUND

#### A.     Procedural History

Plaintiff protectively filed an application for supplemental security income ("SSI") on

February 21, 2003.  (Administrative Transcript ("T") at 54-57.)  The application was denied

---

[1] The parties consented voluntarily to the exercise of jurisdiction by a United States Magistrate Judge.  (Dkt. No. 14.)  The matter was referred to the undersigned on January 17, 2007.  (*Id.*)

initially on April 23, 2003.  (T. at 22.)  Plaintiff requested a hearing before an Administrative Law

Judge ("ALJ") which was held on June 24, 2004.  (T. at 180-192.)  On July 27, 2004, ALJ

Terrence Farrell issued a decision finding that Plaintiff was not disabled.  (T. at 12-20.)

Plaintiff appealed to the Appeals Council, and the ALJ's decision became the final decision

of the Commissioner when the Appeals Council denied Plaintiff's request for review on March 5,

2005.  (T. at 3-7.)  Plaintiff commenced this action on April 4, 2005.  (Dkt. No. 1.)

**B.      The Contentions**

Plaintiff makes the following claims:

(1)  The ALJ erred by failing to find that Plaintiff's spinal condition met or equaled a listed

impairment.  (Dkt. No. 8 at 11-12.)

(2)  The ALJ violated the treating physician rule.  (Dkt. No. 8 at 3-7.)

(3)  The ALJ erred in determining Plaintiff's residual functional capacity.  (Dkt. No. 8 at 7-

11.)

(4)  The ALJ erred in finding that Plaintiff's subjective complaints were not fully credible.

(Dkt. No. 8 at 16-20.)

(5)  The ALJ erred by relying on the Medical-Vocational Guidelines.  (Dkt. No. 8 at 16.)

(6)  The ALJ failed to conduct a full and fair hearing.  (Dkt. No. 8 at 20-23.)

Defendant disagrees, and argues that the decision should be affirmed.  (Dkt. No. 12.)

**II.      APPLICABLE LAW**

**A.      Standard for Benefits**

To be considered disabled, a plaintiff seeking disability insurance benefits ("DIB") or SSI

benefits must establish that he is "unable to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. § 1382c(a)(3)(A) (2004).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is
> not only unable to do his previous work but cannot, considering his age, education,
> and work experience, engage in any other kind of substantial gainful work which
> exists in the national economy, regardless of whether such work exists in the
> immediate area in which he lives, or whether a specific job vacancy exists for him,
> or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)),

the Social Security Administration ("SSA") has promulgated regulations establishing a five-step

sequential evaluation process to determine disability.  20 C.F.R. § 404.1520 (2007).  "If at any step a

finding of disability or nondisability can be made, the SSA will not review the claim further."

*Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he
> is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b),
> 416.920(b).  At step two, the SSA will find non-disability unless the claimant shows
> that he has a "severe impairment," defined as "any impairment or combination of
> impairments which significantly limits [the claimant's] physical or mental ability to do
> basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c).  At step three, the
> agency determines whether the impairment which enabled the claimant to survive step
> two is on the list of impairments presumed severe enough to render one disabled; if
> so, the claimant qualifies.  [20 C.F.R. §§] 404.1520(d), 416.920(d).  If the claimant's
> impairment is not on the list, the inquiry proceeds to step four, at which the SSA
> assesses whether the claimant can do his previous work; unless he shows that he
> cannot, he is determined not to be disabled.[1] If the claimant survives the fourth stage,
> the fifth, and final, step requires the SSA to consider so-called "vocational factors"
> (the claimant's age, education, and past work experience), and to determine whether
> the claimant is capable of performing other jobs existing in significant numbers in the
> national economy.[1] [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f),
> 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003). If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy. *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003); *Serrano*, 2003 WL 22683342, at *10; *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It

must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Serrano*,

2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated*

*Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  "To determine on appeal whether an ALJ's findings are

supported by substantial evidence, a reviewing court considers the whole record, examining the

evidence from both sides, because an analysis of the substantiality of the evidence must also include

that which detracts from its weight."  *Williams*, 859 F.2d at 258.  However, a reviewing court cannot

substitute its interpretation of the administrative record for that of the Commissioner if the record

contains substantial support for the ALJ's decision.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th

Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**III.    THE PLAINTIFF**

Plaintiff was born on November 18, 1975.  (T. at 54.)  She has her high school degree.  (T. at

82.)  She is married and has no past relevant work history.  (T. at 75-76.)  Plaintiff alleges disability

due to the condition of her spinal cord.  (T. at 76.)

**IV.    THE ALJ'S DECISION**

The ALJ found that: (1) Plaintiff had not engaged in any substantial gainful activity since the

date she protectively filed her application on February 21, 2003 (T. at 19); (2) Plaintiff had severe

morbid obesity and "subjective cervical and left shoulder pain," but that none of these impairments,

singly or in combination, met or equaled a listed impairment (*Id.*); (3) Plaintiff retained the residual

functional capacity ("RFC") to perform a full range of light work (*Id.*); (4) Plaintiff had no previous

work history; therefore she was unable to return to past relevant work (*Id.*); (5) Considering the

Medical-Vocational Guidelines, the ALJ found that Plaintiff was not disabled.  (*Id.*)

**V.    DISCUSSION**

A. **Whether The ALJ Erred by Failing to Find that Plaintiff's Spinal Condition Met or Equaled a Listed Impairment**

A claimant is automatically entitled to benefits if his or her impairment(s) meets the criteria set forth in Appendix 1 to Subpart P of Part 404.  20 C.F.R. § 404.1520(d) (2007) (the "Listings"). The burden is on the plaintiff to present medical findings which show that his or her impairments match a listing or are equal in severity to a listed impairment.  *Zwick v. Apfel*, No. 97 Civ. 5140, 1998 WL 426800, at *6 (S.D.N.Y. July 27, 1998).  In order to show that an impairment matches a listing, the claimant must show that his or her impairment meets all of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); 20 C.F.R. § 404.1525(d) (2007).  If a claimant's impairment "manifests only some of those criteria, no matter how severely," such impairment does not qualify.  *Id.*  To make this showing, the claimant must present medical findings equal in severity to all requirements which are supported by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1526(b).  Furthermore, the medical reports should reflect physical limitations based upon actual observations and not just the claimant's subjective complaints.  *Id.*

Plaintiff argues that the ALJ erred by failing to find that her spinal condition met or equaled a listed impairment.[2]  (Dkt. No. 8 at 11-12.)  The relevant listed impairment provides as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:

---

[2]  Plaintiff cites to Listing 1.05C.  (Dkt. No. 8 at 11.)  However, effective February 19, 2002, the Commissioner revised the Listing of Impairments used to evaluate musculoskeletal impairments and replaced Listing 1.05C with new Listing 1.04, which covers three separate sets of criteria for common disorders of the spine: nerve root compression (final listing 1.04A), spinal arachnoiditis (final listing 1.04B), and lumbar spinal stenosis resulting in pseudoclaudication (final listing 1.04C).  *See* Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58010 (Nov. 19, 2001).  Accordingly, the Court will analyze this issue under Listing 1.04 as it is the relevant listing for spinal disorders.

A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04.

Plaintiff has failed to demonstrate that her condition met or equaled any section of Listing 1.04.  Regarding section (A), Plaintiff failed to demonstrate motor loss (atrophy with associated muscle weakness or muscle weakness).  In fact, Plaintiff's treating physician, Rob DeMuro, M.D., and Jae Lyn Burke, registered physician's assistant, indicated that Plaintiff's motor skills were normal.  (T. at 162.)  Similarly, consultative examiner Nader Wassef, M.D. found no evidence of muscle atrophy in Plaintiff's upper extremities.  (T. at 118.)  Moreover, consultative examiner S. Elizabeth Ames, M.D. found that Plaintiff's "[m]uscle bulk feels normal in the upper and lower extremities with no significant atrophy in the small muscles of the hand."  (T. at 153.)  In addition, Plaintiff failed to demonstrate sensory or reflex loss.  Dr. DeMuro and Ms. Burke indicated that Plaintiff's tendon reflexes and sensory abilities were normal.  (T. at 162.)  Dr. Wassef found no sensory abnormality and that reflexes were physiologic and equal in Plaintiff's upper extremities. (T. at 118.)  In light of the foregoing, Plaintiff failed to establish that her condition met or equaled section (A) of Listing 1.04.

Regarding section (B), Plaintiff failed to establish that she was diagnosed with spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04B.  Also, there is no evidence of severe burning or painful dysesthesia or the need for changes in position or posture more than once every 2 hours.  *Id.*  Accordingly, she failed to establish that her condition met or equaled section (B) of Listing 1.04.

Regarding section (C), Plaintiff failed to establish that she was diagnosed with lumbar spinal stenosis that resulted in an inability to ambulate effectively.[3]  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04C.  In fact, Dr. DeMuro indicated that Plaintiff's gait was normal and that she had the ability to walk about six hours in an eight-hour workday.  (T. at 156, 162.)  Moreover, at the hearing, the ALJ asked Plaintiff if she had problems sitting, standing, or walking.  (T. at 189.)  Plaintiff responded that she had problems sitting and standing, but stated no problems with walking.  (*Id.*)  Thus, she failed to establish that her condition met or equaled section (C) of Listing 1.04.

In light of the foregoing, Plaintiff failed to establish that her spinal condition met or equaled Listing 1.04.  Therefore, the Court affirms the ALJ's finding that Plaintiff's spinal condition did not meet or equal a listed impairment.

### B.       Whether The ALJ Violated The Treating Physician Rule

The medical opinions of a treating physician[4] are given "controlling weight" as long as they

---

[3]  "Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(b)(1) (2007).

[4]  "Treating source" is defined as one's own physician, psychologist, or other acceptable medical source who provides, or has provided, medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the patient/plaintiff/claimant.  20 C.F.R. § 404.1502 (2007).

are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2007). In *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004), the Second Circuit provided the following guidance:

> [T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2). Here, the key medical opinions submitted by Dr. Elliott to the ALJ were not particularly informative and were not consistent with those of several other medical experts. Thus, Dr. Elliot's opinion as the treating physician does not sustain controlling weight.

*Halloran*, 362 F.3d at 32.

Even if the treating physician's opinion is contradicted by substantial evidence and thus is not controlling, it still may be entitled to significant weight "because 'the treating source is inherently more familiar with a claimant's medical condition than are other sources.'" *Santiago v. Barnhart*, 441 F. Supp. 2d 620, 627 (S.D.N.Y. 2006) (quoting *Gonzalez v. Callahan*, No. 94 Civ. 8747, 1997 WL 279870, at *11 (S.D.N.Y. May 23, 1997) (citing *Schisler v. Bowen*, 851 F.2d 43, 47 (2d Cir. 1988))). However, if not controlling, the proper weight given to a treating physician's opinion depends upon the following factors: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Plaintiff argues that the ALJ erred by failing to afford controlling weight to the opinions

rendered by her treating physician, Dr. DeMuro, and physician's assistant, Ms. Burke.  (Dkt. No. 8 at 3-7.)  In contrast, Defendant contends that the ALJ relied on Dr. DeMuro's opinion while determining Plaintiff's RFC and that Ms. Burke's opinion is not a medical opinion entitled to controlling weight.  (Dkt. No. 12 at 9.)

Initially, the Court notes that the ALJ was not required to assign controlling weight to the opinion of Ms. Burke because she is a physician's assistant.  Under the Commissioner's regulations, a physician's assistant is not an "acceptable medical source" who can give a medical opinion establishing an impairment.  *See* 20 C.F.R. §§ 416.927(d)(2), 416.913(a), (d)(1) (2007).  Therefore, any opinion rendered by Ms. Burke was not entitled to controlling weight and the ALJ committed no error by affording her opinion less than controlling weight.  *See id.*; *Colondres v. Barnhart*, No. 04 Civ. 1841, 2005 WL 106893, *6 n.97 (S.D.N.Y. Jan. 18, 2005).

With regard to Dr. DeMuro, a review of the decision reveals that the ALJ erred by finding that Dr. DeMuro's assessment "supported" an assessment completed by a non-physician State agency disability examiner on which the ALJ based the RFC determination.  (T. at 18.)  Because Dr. DeMuro was Plaintiff's treating physician, the ALJ should have afforded controlling weight to Dr. DeMuro's opinion if it was well supported and consistent with other substantial evidence in the record.  If the ALJ did not wish to afford controlling weight to this opinion, he should have explained the weight given to the opinion after discussing the factors set forth in the Regulations, which he failed to do.  *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

While it may be argued that Dr. DeMuro's assessment supports the RFC determination, certain findings in the assessment provide no such support.  For instance, Dr. DeMuro found that Plaintiff had occasional postural limitations.  (T. at 157.)  However, the ALJ found no such

-10-

limitations and erred by providing no explanation as to why he rejected these limitations.[5]

In light of the foregoing, the Court remands for a proper evaluation of Dr. DeMuro's opinion. On remand, if the ALJ does not assign Dr. DeMuro's opinion controlling weight he must explain the weight assigned to it, as well as the weight given to the opinions of all other sources.  "Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us." 20 C.F.R. § 404.1527(f)(2)(ii), 416.927(f)(2)(ii) (2007).

To the extent that Plaintiff refers to the findings of Dr. DeMuro and Ms. Burke that Plaintiff is "disabled," (Dkt. No. 8 at 6-7), such statements are not entitled to controlling weight.  Under the Regulations, "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 416.927(e)(1).  Thus, the ALJ was not bound by such statements, as such statements relate to the ultimate issue that rests with the Commissioner.  *See id.*

### C.    Whether The ALJ Erred in Determining Plaintiff's Residual Functional Capacity

A claimant's RFC represents a finding of the range of tasks he or she is capable of

---

[5] Defendant argues that Plaintiff's postural limitations would not preclude her from performing a wide range of light work.  (Dkt. No. 12 at 11.)  For support, Defendant points to Social Security Ruling 85-15, which provides that the light occupational base is "virtually intact" if a person is limited to stooping or crouching occasionally, and that limited abilities to crawl or kneel are "of little significance in the broad world of work."  S.S.R. 85-15, 1985 WL 56857, at *7 (S.S.A. 1985).  It also provides that "[w]here a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work."  *Id.*  However, in this case, Plaintiff's limitations in climbing and balancing are not the only limitations; Dr. DeMuro also limited her abilities to kneel, crouch, crawl, and stoop.  (T. at 157.)  Therefore, Social Security Ruling 85-15 is unpersuasive in this instance.

performing notwithstanding the impairments at issue.  20 C.F.R. § 404.1545(a) (2007).  An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomatology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis.  *Id.*; *Martone v. Apfel*, 70 F.Supp.2d 145, 150 (N.D.N.Y. 1999) (Hurd, D.J.).

To properly ascertain a claimant's RFC, an ALJ must assess a claimant's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull.  20 C.F.R. § 404.1569a (2007).  Non-exertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered.  20 C.F.R. § 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice.  *Martone*, 70 F.Supp.2d at 150 (citing *Ferraris*, 728 F.2d at 587).  Further, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g. daily activities, observations)."  S.S.R. 96-8p, 1996 WL 374184, at *7 (S.S.A.).  An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F.Supp.2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski*, 985 F.Supp. at 309-10.

In this case, the ALJ determined that Plaintiff could perform a full range of light work.[6]  (T.

---

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires

(continued...)

at 20.)  However, Plaintiff claims that she is unable to perform any work due to her impairments.

(Dkt. No. 8 at 11.)  Defendant claims that substantial evidence supports the RFC determination.

(Dkt. No. 12 at 8-15.)

In determining Plaintiff's RFC, the ALJ stated that he was "persua[ded]" by the RFC

assessment provided by a non-physician State agency disability examiner, D. Waterson.  (T. at 18,

124-129.)  In this assessment, it was indicated that Plaintiff could lift and/or carry twenty pounds

occasionally; lift and/or carry ten pounds frequently; and stand and/or walk, or sit, about six hours in

an eight-hour workday.  (T. at 125.)

As stated above, this Court is remanding for the ALJ to reevaluate Dr. DeMuro's opinion,

and to explain the weight he affords the opinion.  *See* Part V.B.  This is of particular import because

Dr. DeMuro is Plaintiff's treating physician and as such his opinion is entitled to controlling weight

as long as it is well supported and consistent with other substantial evidence.  *See* 20 C.F.R. §§

404.1527(d)(2), 416.927(d)(2).  Thus, once the ALJ determines, and explains, the weight afforded to

Dr. DeMuro's opinion, the ALJ should reevaluate what RFC Plaintiff retains.  Accordingly, remand

is necessary.[7]

The Court notes that on remand, the ALJ should discuss the effect of Plaintiff's morbid

_____

[6](...continued)

a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm
or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability
to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do
sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long
periods of time."  20 C.F.R. § 404.1567(b) (2007).

[7]  Regarding Plaintiff's claim that the ALJ erred by failing to prove that she "had a reasonable chance of
being hired," (Dkt. No. 8 at 11), the Regulations provide that "work exists in the national economy when it exists in
significant numbers either in the region where you live or in several other regions of the country.  It does not matter
whether . . . [y]ou would be hired if you applied for work."  20 C.F.R. § 416.966(a) (2007).  Therefore, the ALJ was
under no duty to establish that Plaintiff "had a reasonable chance of being hired."

obesity during Steps Two through Five of the sequential evaluation process, including when assessing Plaintiff's RFC.  While obesity was deleted from the Listing of Impairments, 20 C.F.R. part 404, subpart P, appendix 1, obesity is still "consider[ed] . . . to be a medically determinable impairment" and an ALJ must "consider its effects when evaluating disability."  S.S.R. 02-01p, 2000 WL 628049, at *1 (S.S.A. 2002); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00Q (instructing adjudicators that "when assessing a claim at [Steps Two through Five] of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.").  Here, the ALJ found that Plaintiff's morbid obesity was severe, but he failed to clearly discuss the effects of this condition during the remaining Steps, as required by the Regulations and Social Security Ruling 02-01p.  *See id.*  The Court notes that there is evidence in the record suggesting that Plaintiff's obesity limited the range of motion in her neck and caused postural limitations.  (T. at 137, 157.)  Thus, on remand, the ALJ should discuss the effect of this condition.

Lastly, the Court notes that to the extent that Plaintiff argues that her pain is a nonexertional limitation, (Dkt. No. 8 at 12-14), pain, in and of itself, it not a limitation, but rather a symptom which can be associated with limiting RFC factors.  20 C.F.R. §§ 404.1529(a); 416.929(a) (2007) ("In determining whether you are disabled, we consider all your symptoms, including pain . . ."); S.S.R. 96-8p, 1996 WL 374184, at * 1 (S.S.A. July 2, 1996) ("[S]ymptoms, including pain, are not intrinsically exertional or nonexertional.  It is the functional limitations or restrictions caused by medical impairments and their related symptoms that are categorized as exertional or nonexertional").  Thus, this contention is without merit.

**D.     Whether The ALJ Erred in Finding that Plaintiff's Subjective Complaints Were**

-14-

**Not Fully Credible**

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.  20 C.F.R. § 404.1529 (2007); *see also Foster v. Callahan*, Civ. No. 96-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998); S.S.R. 96-7p, 1996 WL 374186 (S.S.A. 1996).  First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment(s) which could reasonably be expected to produce the claimant's pain or other symptoms.  S.S.R. 96-7p, 1996 WL 374186, at *2.  This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms.  *Id.*  If no impairment is found which could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities.  *Id.*  An individual's statements about his pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled.  *Id.*

However, once an underlying physical or mental impairment(s) which could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to evaluate the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work

-15-

activities.  S.S.R. 96-7p, 1996 WL 374186 at *2.  Whenever a claimant's statements about the

intensity, persistence, and limiting effects of the claimant's pain or other symptoms are not

substantiated by objective medical evidence, the ALJ must make a finding on the claimant's

credibility.  *Id.*  A claimant's symptoms will be determined to diminish his/her capacity for basic

work activities to the extent that his/her alleged functional limitations and restrictions due to

symptoms can reasonably be accepted as consistent with the objective medical evidence and other

evidence in the case record.  *Id.*

A claimant's symptoms can sometimes suggest a greater level of severity than can be shown

by the objective medical evidence alone.  S.S.R. 96-7p, 1996 WL 374186, at *3.  When the objective

evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's

symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering

the record in light of the following symptom-related factors: (1) claimant's daily activities; (2)

location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating

factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms;

(5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve

symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due

to symptoms.  20 C.F.R. § 404.1529(c)(3).

An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported

by substantial evidence.  *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 WL 470572, at *10 (S.D.N.Y.

Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999) and *Bomeisl v.*

*Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998)

("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are

-16-

entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.")).

Plaintiff argues that the ALJ erred in assessing her credibility. (Dkt. No. 8 at 12-14.) Defendant argues that the ALJ properly evaluated Plaintiff's credibility. (Dkt. No. 12 at 16-19.)

In this case, the ALJ found that Plaintiff "was not particularly credible." (T. at 19.) In so finding, he discussed the relevant factors set forth in the Regulations, including Plaintiff's daily activities, the location of her symptoms, the type of medication taken to relieve symptoms, and the relatively conservative treatment measures taken by Plaintiff. (T. at 17, 19.)

The ALJ also pointed out numerous inconsistent statements located in Plaintiff's testimony, in a consultative examiner's report, and in a questionnaire. (T. at 19.) While Plaintiff characterizes these inconsistencies as "petty," (Dkt. No. 8 at 9), the Court notes that "[o]ne strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." S.S.R. 96-7p, 1996 WL 374186, at *5 (S.S.A. 1996). The ALJ noted that Plaintiff stated in a questionnaire that her condition first bothered her in December of 2002, but Dr. Wassef noted that she stated that she experienced pain beginning in 1996. (T. at 19, 76, 117.) The ALJ also pointed out that Plaintiff stated that her condition never changed, but that Dr. Wassef noted that based on Plaintiff's statements, "[i]t seems that lifting or cold weather can aggravate it." (T. at 19, 117, 188.) The ALJ also noted that Plaintiff testified that she is unable to perform any household tasks, yet Dr. Wassef noted that Plaintiff stated that she cooks, cleans, shops, and does laundry with the help of her husband. (T. at 19, 118, 190-191.) Further, the ALJ noted that Plaintiff indicated in a questionnaire that she was able to walk only approximately one to three feet before stopping, but when asked at the hearing if she had problems with sitting, standing, or walking,

-17-

she stated no problems with walking.  (T. at 19, 101, 189-190.)

Based on the foregoing, the Court finds that substantial evidence supports the ALJ's credibility determination.  The ALJ discussed the relevant factors as required by the Regulations, and pointed out numerous inconsistencies in Plaintiff's statements.  Thus, the Court affirms the ALJ's finding in this regard.

### E.    Whether The ALJ Erred by Relying on The Medical-Vocational Guidelines

Plaintiff argues that the ALJ erred by relying on the Medical-Vocational Guidelines (the "Grid") because her ability to perform a full range of work is limited significantly.  (Dkt. No. 8 at 16.)  Defendant argues that the ALJ's reliance on the Grid was proper because Plaintiff's limitations are not significant.  (Dkt. No. 12 at 19-20.)

Because the Court is remanding to allow the ALJ to reevaluate the treating physician's opinion and Plaintiff's RFC, the Court remands on this issue as well.  Upon remand, the ALJ shall obtain the opinion of a vocational expert if Plaintiff's nonexertional limitations present significant limitations.  *See Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986) (holding that if a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional limitations" the application of the grids is inappropriate).

### F.    Whether The ALJ Failed to Conduct A Full And Fair Hearing

#### 1.    Knowing and Voluntary Waiver of Representation

Plaintiff argues that the ALJ failed to conduct a full and fair hearing because Plaintiff did not knowingly and voluntarily waive her right to counsel.  (Dkt. No. 8 at 20-22.)  Defendant contends that Plaintiff knowingly and voluntarily waived her right to counsel.  (Dkt. No. 12 at 20-22.)

Claimants have a statutory right to notification of their options for obtaining legal

-18-

representation in SSI and disability insurance benefit claims.  42 U.S.C. §§ 406(c), 1383(d)(2)(B) (2006) ("The Commissioner of Social Security shall notify each claimant in writing, together with the notice to such claimant of an adverse determination, of the options for obtaining attorneys to represent individuals in presenting their cases before the Commissioner of Social Security.  Such notification shall also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge."); *see also* 20 C.F.R. §§ 404.1706, 416.1506 (2007) ("[W]e will include with the notice of that determination or decision information about your options for obtaining an attorney to represent you in dealing with us.  We will also tell you that a legal services organization may provide you with legal representation free of charge if you satisfy the qualifying requirements applicable to that organization.").  "Once a claimant is provided with adequate notice of his right to counsel, he may effectively waive the option to proceed with counsel in writing or orally before the judge."  *Vaughn v. Apfel*, No. 98 Civ. 0025(HB), 1998 WL 856106, at *4 (S.D.N.Y. Dec. 10, 1998) (citing *Frank v. Chater*, 924 F. Supp. 416, 423 (E.D.N.Y. 1996)); *see also Osorio v. Barnhart*, No. 04 Civ. 7515 (DLC), 2006 WL 1464193, at *8 (S.D.N.Y. May 30, 2006).

Even if an ALJ does not sufficiently inform a plaintiff of his/her rights, the lack of counsel, in and of itself, is not a sufficient ground upon which remand or reversal may be based. *Alvarez v. Bowen*, 704 F. Supp. 49, 53 (S.D.N.Y. 1989).  Plaintiff must show prejudice or unfairness in the proceeding.  *See Evangelista v. Sec'y of Health and Human Servs.*, 826 F.2d 136, 142 (1st Cir. 1987); *Osorio*, 2006 WL 1464193, at *9; and *Colondres v. Barnhart*, No. 04 Civ. 1841 (SAS), 2005 WL 106893, at *5 (S.D.N.Y. Jan. 18, 2005).

Prior to the hearing held on June 24, 2004, the ALJ sent Plaintiff a letter, dated November 20,

-19-

2003, describing the hearing process and how she could prepare for the hearing.  (T. at 40-47.)  The letter also informed Plaintiff of her right to be represented by an attorney or other representative of her choice.  (*Id.*)  Enclosed was a publication entitled "Your Right to Representation," which provided answers to frequently asked questions and a list of agencies which provided legal services.  (T. at 43-47.)  Thereafter, on April 16, 2004, the ALJ sent a letter to Plaintiff to notify her of the details of the hearing.  (T. at 48-50.)  The letter also informed Plaintiff that she may choose to have a representative.  (T. at 49.)

At the hearing, the ALJ informed Plaintiff of her right to have counsel or a representative present, which Plaintiff acknowledged as follows:

ALJ: Ma'am, do you understand you have a right to be represented by an attorney or other qualified representative?

Clmnt: Yes, I do.

(T. at 182.)

The ALJ then explained the functions a representative could perform, the fee arrangement, and the possibility of free counsel.  (T. at 182-183.)  Plaintiff acknowledged that she received a list of possible representatives.  (T. at 183.)  The ALJ then informed Plaintiff that he would postpone the hearing if she wished to obtain a representative.  (*Id.*)  The ALJ then asked Plaintiff if she had any questions regarding her right to have a representative to which Plaintiff responded "No."  (*Id.*)  The ALJ then asked Plaintiff to review a Waiver of Right to Representation form and sign it if she wished to proceed without representation.  (*Id.*)  Plaintiff signed the form, which stated as follows:

I have been advised, and I understand, that I have the right to be represented in this proceeding by an attorney or by any other qualified person of my choice.

I have considered this matter, and have decided to waive my right to such

-20-

representation, and wish to proceed without a representative.

(T. at 53.)

The Court finds that the foregoing constitutes adequate notice of the right to representation. Plaintiff was provided with two written notices of her right to representation and was informed of the right in person at the hearing.  (T. at 45-50.)  The Court also finds that Plaintiff knowingly and voluntarily waived this right based on the statements she made at the hearing and her signed waiver form.[8]  (T. at 182-183.)

While Plaintiff appears to argue that her cognitive ability prevented a knowing and voluntary waiver and points to statements made by her treating physician, Dr. DeMuro, who opined that Plaintiff had an "educational naivete and mild but significant decrease in cognition," and that Plaintiff had "decreased mental capacities," Dr. DeMuro provided no supporting evidence to substantiate these conclusory statements.  (*See* T. at 131, 157).  There is no other indication in the medical records that Plaintiff had a decreased cognitive ability and Plaintiff did not claim a cognitive impairment as a basis for disability.  Moreover, Plaintiff graduated from high school where she attended regular education classes.  (T. at 82.)  In light of the foregoing, this claim is unavailing.

## 2.    Review of Record

Plaintiff argues that the ALJ failed to conduct a meaningful review of the record because of the length of the hearing transcript and because the ALJ failed to inquire into the effect of Plaintiff's obesity.  (Dkt. No. 8 at 22.)  Defendant argues that the ALJ conducted a meaningful review of the record.  (Dkt. No. 12 at 24.)

---

[8]  Contrary to Plaintiff's apparent argument, (Dkt. No. 8 at 22), the inaudible portion of testimony which occurred after the ALJ asked Plaintiff if she wished to postpone the hearing did not make Plaintiff's waiver involuntary, since she subsequently signed the waiver form.  (T. at 183-184.)

If a claimant appears *pro se*, "the ALJ has a 'duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'"  *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980).  "In such cases where the claimant was 'handicapped by lack of counsel' at the administrative hearing, the reviewing court has 'a duty to make a searching investigation' of the record to ensure that the claimant's rights have been adequately protected."  *Id.* (quoting *Gold v. Sec'y of HEW*, 463 F.2d 38, 43 (2d Cir. 1972)).

Plaintiff cites *Cruz v. Sullivan*, 912 F.2d 8, 11-12 (2d Cir. 1990), for support of her assertion that the mere length of the hearing transcript, which was ten pages, establishes that the ALJ failed to conduct a meaningful review.  (Dkt. No. 8 at 22.)  The Court in *Cruz* found that a thirteen-page hearing transcript revealed a "host of lost opportunities to explore the facts."  912 F.2d at 11.  This Court has reviewed the hearing transcript and is reluctant to find that it reveals a "host of lost opportunities to explore the facts."  However, the Court is remanding for other reasons and notes that if it is determined on remand that a new hearing is necessary, the ALJ should explore all the relevant facts, including the effect of Plaintiff's morbid obesity.[9]

**WHEREFORE**, for the reasons set forth above, it is hereby

**ORDERED**, that the decision denying disability benefits be **REVERSED** and this matter be

---

[9] To the extent that Plaintiff argues that she was deprived of a full and fair hearing because the ALJ failed to "advise [her] of her right to cross exam [sic] the State [a]gency medical reviewer," (Dkt. No. 8 at 22), the Court notes that prior to the hearing, Plaintiff was notified of her right to request the ALJ to issue a subpoena "that requires a person to submit documents or testify at your hearing."  (T. at 40.)  Thus, this claim is unavailing.

**REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g)[10] for further

proceedings consistent with the above.

**IT IS SO ORDERED.**

Dated: August 1,  2007
       Syracuse, New York

                                 George H. Lowe
                                 United States Magistrate Judge

---

[10] Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2006).

-23-